UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CURLEY RICHARD, | : | |
|    Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 3:10CV225 (DJS) |
| | : | |
| TOWN OF GREENWICH, | : | |
|    Defendant, | : | |
| | : | |

<u>MEMORANDUM OF DECISION AND ORDER</u>

The plaintiff, Curley Richard ("Richard"), brings this action against the defendant, the Town of Greenwich ("the Town"), alleging unlawful discrimination on the basis of race and color in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"),  42 U.S.C. §1981 ("1981"), and the Connecticut Fair Employment Practices Act ("CFEPA") . Richard also alleges employment discrimination on the basis of age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"). Richard's claims arise out of the Town's appointment of a different candidate to a Town position for which Richard had applied and was qualified.  Now pending before the Court is the defendant's motion for summary judgment, in which the defendant contends that there is no genuine dispute of material fact, and that the defendant is entitled to summary judgment because the defendant had legitimate, nondiscriminatory reasons for the selection decision as a matter of law and there is no evidence of pretext. For the reasons stated below, the defendant's motion for summary judgment (d**oc. # 20) is **denied**.

I. <u>BACKGROUND</u>

On September 26, 2008, the Town published an advertisement seeking a qualified candidate for the position of Process Control Manager in the Sewer Department of the Town's Department of Public Works.  The advertisement specifically stated, "The Town of Greenwich

announces open competitive examination for the position of Process Control Manager Department of Public Works Sewer Department." (Doc. # 20-7, at 2).  An open competitive examination means that the position is available to outside candidates as well as internal candidates already employed with the Town.

The Town's Process Control Manager is responsible for the operation of a wastewater treatment plant known as the Grass Island Wastewater Treatment Plant ("the Plant").  The Process Control Manager must make every effort to see that the Plant meets the limits specified in the permit issued to it by the State of Connecticut, manage the staff that operates the Plant, and interact with the Wastewater Division Manager on projects relating to the Plant.

On October 7, 2008, Richard applied for the position of Process Control Manager. At that time, Richard, who was a sixty-three year old African American man, had worked in the wastewater treatment field for over thirty years, and had worked as a plant Superintendent for the Metropolitan District Commission for thirteen years.  Richard's application, along with those of the other three individuals who applied for the position, was reviewed by the Department of Human Resources for a basic minimal qualifications assessment.  Minimum qualifications for the Process Control Manager were:

> 1.  Bachelor's Degree from an accredited college or university
> in Environmental or Civil Engineering or a closely related
> field plus 5 years of experience in environmental engineering,
> including 2 years administrative experience.
> 2.  Education and experience  equivalent to #1 above.

(Doc # 20-7, at 2). Each candidate was given a score by the Department of Human Resources based on the information contained in the candidate's application and the posted qualifications. Three of the four applicants were found to meet the minimal qualifications and qualified to be on the eligibility list.

Richard did not have a Bachelor's degree in Environmental or Civil Engineering or a closely related field, but the Department of Human Resources determined that he met the minimum qualifications for the job based upon an equivalent combination of education (Associate's degree) and experience.  The Department also gave Richard a 5 point credit because he was a Veteran.  Richard received a total score of 83%, and each of the other two eligible candidates received a score of 70%.

Amy Siebert ("Siebert"), the Town's Commissioner of Public Works, subsequently convened a three-person panel to interview the three eligible applicants. The interview panel consisted of Siebert;  Richard Feminella ("Feminella"), Wastewater Division Manager for the Town; and Jeanette Brown ("Brown"), the Executive Director of the Stamford Water Pollution Control Authority. Siebert also prepared a set of interview questions to ask the three candidates. The interviews were conducted on December 3, 2008. After the interviews were conducted the panel members discussed the candidates. In affidavits submitted in support of the Town's summary judgment motion, the two panel members who were Town employees indicate that, "Mr. Richard did not demonstrate good presentation or communication skills. He tended to look down when speaking and was quiet, at times difficult to understand." (Doc. # 20-8, at 5, ¶ 19 and Doc. # 20-14, at 6, ¶ 18).  Those same two panel members stated in their affidavits that another candidate, Dwayne Lockwood ("Lockwood"), "clearly demonstrated superiority in terms of presentation and communication skills versus the other two candidates." (Doc. # 20-8, at 5, ¶ 17 and Doc. # 20-14, at 5, ¶ 16).

Siebert's interview notes include a notation that Lockwood was "weak [in] maintenance." (Doc. # 20-19, at 4). One of the essential features of the position of Process Control Manager is participating as part of the team "in plant maintenance program, including the computerized

maintenance management system." (Doc. # 20-7, at 4). Siebert's notes also indicate that Lockwood was "weak [in] CIP," i.e., capital improvement projects.  (Doc. # 20-19, at 4). One of the questions Siebert prepared for the panel interviewing candidates for the position of Process Control Manager was, "What is your experience in asset management/capital project delivery?" (Doc. # 20-16, at 3).  An essential feature of the position of Process Control Manager was "[p]articipat[ing] in long-term Sewer Division strategic planning and shorter-term business plans, providing input and participating in plan execution and communication among staff." (Doc. # 20-7, at 4).

Siebert subsequently selected Lockwood for the position of Process Control Manager. The Town did not notify the unsuccessful candidates that they had not been selected for the position.  In January 2009 Richard discovered that the Town had hired Lockwood, a forty-seven year old Caucasion. On or about January 29, 2009, Richard filed a charge of employment discrimination on the basis of age, race and color with both the State of Connecticut Commission on Human Rights and Opportunities and the United States Equal Employment Opportunity Commission.

## II. DISCUSSION

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Redd v. N.Y. State Division of Parole*, 678 F.3d 166, 173-74 (2d Cir. 2012) (internal quotation marks omitted). In making that determination, the Court must "construe the evidence

4

in the light most favorable to the non-moving party and . . . draw all reasonable inferences in its favor." *Huminski v. Corsones*, 396 F.3d 53, 69-70 (2d Cir. 2004) (internal quotation marks omitted).

"The moving party bears the burden of showing that he or she is entitled to summary judgment." *Id.* at 69. The movant can satisfy that burden by "point[ing] to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March* of *Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995). "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor." *Burt Rigid Box, Inc. v. Travelers Property Casualty Corp.*, 302 F.3d 83, 91 (2d Cir. 2002). "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." *American Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315 (2d Cir. 2006). (internal quotation marks omitted).

### B. Age Discrimination Claim Under the ADEA

The ADEA's purpose is to "promote employment of older persons based on their ability rather than age [and] to prohibit arbitrary age discrimination in employment . . . ." 29 U.S.C. § 621 (b). Pursuant to the ADEA "[i]t shall be unlawful for an employer . . . to fail or refuse to hire . . .  any individual . . .  because of such individual's age . . . ." 29 U.S.C. § 623 (a). The ADEA's prohibition against age discrimination protects "individuals who are at least 40 years of age." 29 U.S.C. § 631 (a).

"Claims brought pursuant to the ADEA are analyzed under the *McDonnell Douglas* . . . tripartite burden-shifting framework." *Timbie v. Eli Lilly & Co.*, 429 F. App'x 20, 21-22 (2d Cir. 2011). "In a nutshell, a plaintiff first bears the minimal burden of setting out a prima facie discrimination case, and is then aided by a presumption of discrimination unless the defendant proffers a legitimate, nondiscriminatory reason for the adverse employment action, in which event, the presumption evaporates and the plaintiff must prove that the employer's proffered reason was a pretext for discrimination." *McPherson v. N.Y. City Dept. of Education*, 457 F. 3d 211, 215 (2d Cir. 2006) (internal quotation marks omitted). In the context of an ADEA claim, once the defendant articulates a legitimate, nondiscriminatory reason for the adverse employment action, "the plaintiff must show that a reasonable jury could conclude by a preponderance of the evidence that [the plaintif's] age was a 'but for' cause of [the adverse employment action]." *Timbie*, 429 F. App'x at 22 (internal quotation marks omitted).

Circumstantial evidence may be used to prove a violation of the ADEA. *See Carlton v. Mystic Transportation, Inc.*, 202 F. 3d 129, 135 (2d Cir. 2000). The Second Circuit has noted that "[d]irect evidence of discrimination is not necessary, because proof is seldom available with respect to an employer's mental processes. Instead, plaintiffs in discrimination suits often must rely on the cumulative weight of circumstantial evidence, since an employer who discriminates against its employee is unlikely to leave a well-marked trail, such as making a notation to that effect in the employee's personnel file." *Id.* (citation omitted).

i. Prima Facie Case

"In order to establish a prima facie case of age discrimination, [Richard] must show (1) that [he] was within the protected age group, (2) that [he] was qualified for the position, (3) that

[he] experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski v. JetBlue Airways Corp*., 596 F. 3d 93, 107 (2d Cir. 2010). A plaintiff's burden in establishing a prima facie case of discrimination is "de minimis," *Timbie*, 429 F. App'x at 22.

The evidence before the Court demonstrates that Richard was 63 years old at the time he was not hired, thus falling within the protected age group, and that the Town's Human Resource Department objectively ranked Richard higher than the other two eligible candidates, with a score of 83%. With regard to experiencing adverse employment action, there is no dispute that Richard was denied the Process Control Manager position. The Town did not hire Richard for the position and instead selected Lockwood. In addition, Richard filed a timely charge of employment discrimination with both the State of Connecticut Commission on Human Rights and Opportunities and the United States Equal Employment Opportunity Commission, both of which were filed within 180 days of the commission of the alleged unlawful employment practices as required by the ADEA. *See* 29 U.S.C. § 626 (d).

The Court concludes that the evidence before it, construed in the light most favorable to the non-moving party, i.e., Richard, could support a finding that this adverse employment action occurred under circumstances giving rise to an inference of discrimination. "Examples of how a plaintiff could show that the circumstances support an inference of discrimination include but are not limited to . . . the sequence of events leading to the alleged discriminatory event." *Gaffney v. Dep't of Info. Tech. & Telecommunications,* 536 F. Supp. 2d 445 (S.D.N.Y. 2008). Richard has provided evidence that he had worked in the wastewater treatment field for over thirty years, including thirteen years working as a plant Superintendent for the Metropolitan District Commission. He further provided evidence that the Human Resources Department had ranked

him higher than the other two candidates by a substantial degree. Despite Richard's

qualifications and ranking by the Human Resources Department, the Town hired Lockwood,

who is sixteen years younger than Richard. The Court finds that Richard has satisfied his

minimal burden of establishing a prima facie case of age discrimination.

### ii. Legitimate, Nondiscriminatory Reason

The second step under *McDonnell Douglas* is the articulation of a legitimate,

nondiscriminatory reason for the adverse employment action by the defendant.  One reason

offered by the Town in support of its hiring decision is Lockwood's familiarity with, and record

of successful experience at, the Plant. This experience included time spent as Acting Process

Control Manager at the Plant. The Town contends that familiarity with the operations of the

Plant was particularly important "because no two wastewater plants operate in exactly the same

way." (Doc. # 20-8, at 4, ¶ 10).  Another reason articulated by the Town relates to the

candidates' presentation and performance at their interviews. The Town contends that Lockwood

had a more commanding presence at the interview and, relative to the two other candidates, his

communication skills were superior.  By contrast, the Town argues that during his interview

Richard tended to look down when speaking and was quiet, at times difficult to understand.

Thus the Town has articulated legitimate, nondiscriminatory reasons for not selecting

Richard for the Process Control Manager Position and, for that reason, the Town has met its

*McDonnell Douglas* burden of production.

### iii. Pretext

Since the defendant has met its burden of articulating a legitimate, nondiscriminatory

reason for not hiring Richard, the Court must "determine, by looking at the evidence [Richard]

has proffered and the counter-evidence [the Town] has presented, whether [Richard] has raised

sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that [his] age was a 'but for' cause of [the Town's] decision to [not hire him]. In this respect it is important to consider whether the explanations that [the Town] gave for [not hiring Richard] were pretextual." *Gorzynski*, 596 F.3d at 107. "Relying on the same evidence that supports an inference of discriminatory intent," Richard "could satisfy his burden of persuasion on the ultimate issue," i.e., demonstrating pretext. *Miller v. Hartford Fire Insurance Co.,* 652 F. Supp. 2d 220, 232 (D. Conn. 2009).

"A plaintiff may show pretext by demonstrating 'such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Bombero v. Warner-Lambert Co.*, 142 F. Supp. 2d 196, 203 n. 7 (D. Conn 2000) (quoting *Anderson v. Coors Brewing Co.*, 181 F. 3d 1171, 1179 (10th Cir. 1999)).  With regard to the Town's stated reason that Richard was not as familiar with the operations of the Plant and did not have as much experience as Mr. Lockwood, Richard has provided evidence that he had previously been in charge of two wastewater treatment facilities which are larger than the Greenwich wastewater treatment facility.  By contrast, Richard provided evidence that Lockwood supervised only one or two other operators per shift in his position as a shift operator at the Plant. Although Siebert initially testified at her deposition that Lockwood was a "chief shift operator," she subsequently retracted that statement, indicating that she "misspoke saying chief shift operator." (Doc. # 23-13, at 14:25, 15:2-4).

 Siebert's interview notes indicated that Lockwood was "weak" in "process," "maintenance," and "CIP [capital improvement projects]." (Doc. # 20-19, at 4). The Town's

official posting for the position of Process Control Manager listed  "participat[ing]in plant maintenance program, including the computerized maintenance management system" as one of the essential features of the position (Doc. # 20-7, at 4). Also listed as an essential feature of the position was assisting with "the review and evaluation of data to support repair, rehabilitation, and long-term capital replacement/planning decisions." (*Id.*). One of the specific questions Siebert prepared for the interview panel was, "What is your experience in asset management/capital project delivery?" (Doc. # 20-16, at 3).  With regard to the Town's stated reason that Richard did not interview as well as Mr. Lockwood, the Court notes that while the affidavits from the two panel members who were Town employees both contain the identical statement that Richard "did not demonstrate good presentation or communication skills" at his interview, there is no similar statement from the third interviewer, Brown, who was not a Town employee. (Doc. # 20-8, at 5, ¶ 19 and Doc. # 20-14, at 6, ¶ 18 ).

As was previously indicated, in determining the defendant's motion for summary judgment the Court must "construe the evidence in the light most favorable to the non-moving party and . . . draw all reasonable inferences in its favor." *Huminski v. Corsones*, 396 F.3d 53, 69-70 (2d Cir. 2004) (internal quotation marks omitted). The Court finds that the record evidence could support a conclusion that the Town's stated reasons for not hiring Richard were pretextual, and that "a reasonable jury could conclude by a preponderance of evidence that [his] age was a 'but for' cause of [the Town's] decision to [not hire him]." *Gorzynski*, 596 F. 3d at 107. For that reason, the defendant's motion for summary judgment is denied as to the plaintiff's ADEA claim.

C. Race Discrimination Claims Under Title VII, § 1981, and CFEPA

Claims of race discrimination under Title VII, § 1981, and CFEPA are also analyzed using the *McDonnell Douglas* burden-shifting framework. *See Collins v. Connecticut Job Corps*, 684 F. Supp. 2d 232, 249 (D. Conn. 2010) (internal quotation marks omitted) ("Claims of race . . . discrimination under [Title VII and CFEPA] are governed by the *McDonnell Douglas* three-part burden shifting framework."); *see also Vivenzio v. City of* Syracuse, 611 F.3d 98, 106 (2d Cir. 2010) ("The substantive standards applicable to claims of employment discrimination under Title VII . . . are also generally applicable to claims of employment discrimination brought under § 1981 . . . ."). To prevail on a claim of race discrimination under Title VII, a plaintiff must "prov[e] by the preponderance of the evidence a prima facie case of discrimination." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). If the plaintiff makes this showing, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* at 253 (internal quotation marks omitted). If the defendant can provide a legitimate, nondiscriminatory reason for the rejection, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.*

The Court has already analyzed Richard's ADEA claim under *McDonnell Douglas* and determined that his claim satisfies the burden-shifting standard established by the Supreme Court in that case. For essentially the same reasons previously stated as to his ADEA claim, Richard's race discrimination claims under Title VII, §1981, and CFEPA also satisfy the *McDonnell Douglas* standard. The second, third, and fourth prongs of the standard are the same with respect to his race discrimination claims as they were to his ADEA claim. With regard to the first prong,

Richard, who is an African American man, clearly is a member of a protected class for purposes of Title VII, §1981, and CFEPA. The individual who was appointed to the Process Control Manager position was a white male. "Title VII forbids an employer from intentionally discriminating against an employee because of that employee's 'race [or] color . . . .'" *Bickerstaff v. Vassar College*, 196 F.3d 435, 445 (2d Cir. 1999) (quoting 42 U.S.C. § 2000e-2(a)).

For the same reasons specified as to the ADEA claim, the Court finds that the record evidence, construed in the light most favorable to Richard, could support a conclusion by a reasonable jury "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253. For that reason, the defendant's motion for summary judgment is denied as to Richard's race discrimination claims under Title VII, § 1981, and CFEPA.

III. CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment (**Doc. # 20**) is **DENIED**.

**SO ORDERED** this   5th   day of  September,  2014.

_____/s/ DJS_____
DOMINIC J. SQUATRITO
UNITED STATES DISTRICT JUDGE